# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NATALIE ANDERSON,**

          **Plaintiff,**

       v.                                                     Case No. 16-CV-1181

**SOFTWAREONE, INC.,**

          **Defendant.**

## ORDER

**1. Background**

On September 2, 2016, Natalie Anderson, a former employee of SoftwareONE, Inc., filed this action alleging that SoftwareONE violated the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964. (ECF No. 1.)

According to her complaint, Anderson began working at SoftwareONE as a "contract employee" in September 2014 as "North America Recruiting Lead." (ECF No. 1, ¶ 5.) She began working as a permanent employee in March of 2015. (ECF No. 1, ¶ 6.) "Anderson lodged an internal complaint of discrimination and harassment based upon sex and age, on October 1, 2015." (ECF No. 1, ¶ 7.) Anderson states in her complaint that "[a] true and correct copy of that written complaint is attached hereto as Exhibit A.

Complainant incorporates her internal complaint into this Complaint as if fully restated, here." (ECF No. 1, ¶ 7.) However, no such exhibit is attached to the complaint filed with the court. But in answering the complaint the defendant did not dispute Anderson's assertion that Exhibit A was attached to the complaint. (ECF No. 5, ¶ 7.) In any event, the internal complaint was apparently submitted to the court in connection with the present motion. (ECF No. 25-1.)

SoftwareONE performed an internal investigation of Anderson's complaint and concluded that no unlawful conduct occurred. (ECF No. 1, ¶¶ 8, 9.) Apparently, QTI Human Resources, Inc. was retained by SoftwareONE to perform that investigation; however, the date when QTI was retained is not clear. According to Anderson, SoftwareONE "did not provide a fair, reasonable, and objective investigation into Anderson's complaint." (ECF No. 1, ¶ 10.) SoftwareONE fired Anderson on December 30, 2015. (ECF No. 1, ¶ 14.)

On October 6, 2017, Anderson subpoenaed QTI for all of its documents related to Anderson, including specifically:

> Any and all documents related to QTI Human Resources, Inc.'s investigation of allegations made by Natalie Anderson.
>
> Any and all documents related to QTI Human Resources, Inc. 's findings, opinions, and/or conclusions regarding allegations made by Natalie Anderson.
>
> Any and all documents exchanged between QTI Human Resources, Inc. and SoftwareONE, Inc. that in any way relates to Natalie Anderson.

> Any and all documents exchanged between QTI Human Resources, Inc. and SoftwareONE, Inc. that in any way relates to the investigation performed by QTI Human Resources, Inc.'s investigation of allegations made by Natalie Anderson.

(ECF No. 26-1 at 2 (numbering omitted).)

SoftwareONE seeks to quash the subpoena on the basis that "[t]he materials sought in the subpoena are confidential, as well as privileged by the work product privilege and the attorney client privilege." (ECF No. 20 at 1.) It argues "[t]he scope of Plaintiff's subpoena to QTI encompasses privileged information including SWO's business contracts with QTI, billing information and records related to the same, and documents related to discussions between QTI and SWO's counsel made as a result of anticipated litigation by Plaintiff." (ECF No. 21 at 4-5.)

Anderson opposed the motion. (ECF No. 24.) SoftwareONE did not timely reply, but on December 15, 2017, filed a motion seeking leave to file an untimely reply. (ECF No. 27.) Because it has failed to show that its untimeliness was the result of excusable neglect, *see* Fed. R. Civ. P. 6(b)(1)(B), the court will deny SoftwareONE's motion to file an untimely reply. The fact that it was only after the reply deadline that SoftwareONE learned that Anderson had retained counsel before she made her October 1, 2015 internal complaint to SoftwareONE is irrelevant to whether the documents in dispute were created in anticipation of litigation.

According to SoftwareONE, "[o]n October 8, 2017, [it] entered into an agreement with QTI under which the parties acknowledged that materials and information created

3

by QTI during and as a result of the investigation would be kept confidential. See Agreement, attached in relevant part as Exhibit A." (ECF No. 21.) If that date is accurate, it was not until two days *after* Anderson's subpoena (and apparently nearly two years after QTI completed any investigation) that SoftwareONE and QTI agreed that the investigation should be confidential. The court recognizes that there is a good chance the date is a typo (a conclusion supported by the plethora of other typos in SoftwareONE's brief), and that the real date is supposed to be October 8, 2015, one week after SoftwareONE received the internal complaint from Anderson. But since the copy of the agreement that SoftwareONE filed with the court is nearly entirely redacted and does not contain a date, the court has nothing to rely on other than SoftwareONE's counsel's statement in its brief. Therefore, the court must accept that the agreement was entered into on October 8, 2017. That being the case, the court affords no weight to a confidentiality agreement entered into only after the issuance of a subpoena.

But the absence of a written confidentiality agreement does not mean the records are necessarily subject to disclosure.

**2. Attorney-Client Privilege**

The court sees no basis for concluding that the requested documents are protected by the attorney-client privilege, as that privilege has been articulated by the Court of Appeals for the Seventh Circuit. *See e.g., United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). The party seeking to invoke the privilege bears the burden to prove

4

(1) it sought legal advice "(2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Id.* (quoting 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev. 1961)); *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009) ("The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice.").

All SoftwareONE can muster in support of its argument is that "QTI's investigation was done at the direction of SWO's in-house and outside counsel," and "SWO's counsel provided legal advice and direction so to ensure that the QTI investigation moved forward in an adequate way." (ECF No. 21 at 6.)

The first argument—that QTI's investigation was done at the direction of SoftwareONE's counsel—is not enough to suggest the applicability of the attorney-client privilege. *Resnick v. ADA*, 95 F.R.D. 372, 375 (N.D. Ill. 1982) ("It is of course not enough that the work 'was initiated with advice of counsel, and counsel for ADA was kept advised of the activities as they progressed.'"). Even if initiated by a business's attorney, investigations undertaken for the purpose of making business decisions, as opposed to obtaining legal advice, are not privileged. *See Chartraw v. City of Shawano*,

5

No. 16-C-807, 2017 U.S. Dist. LEXIS 187590, at *10 (E.D. Wis. Nov. 14, 2017) (citing *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 316 (N.D. Ill. 2010)). SoftwareONE has failed to establish that this investigation was undertaken, and the relevant documents produced, for the purpose of obtaining legal advice from its counsel.

As for the second point—that SoftwareONE's counsel provided legal advice and direction so as to ensure that the QTI investigation moved forward in an adequate way—if SoftwareONE is attempting to suggest that its in-house counsel entered into an attorney-client relationship with QTI, it falls far short of establishing that.

Only if QTI's investigators were "professional legal adviser[s]," SoftwareONE sought their legal advice, and made confidential communications for the purpose of obtaining legal advice, would the communications plausibly be privileged. *See id*. (quoting 8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2292 (John T. McNaughton rev. 1961).); *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2009). SoftwareONE does not allege this to be the case. Moreover, "a claim of privilege generally 'must be made and sustained on a question-by-question or document-by-document basis.'" *Towne Place Condo. Ass'n v. Phila. Indem. Ins. Co.*, 284 F. Supp. 3d 889, 894 (N.D. Ill. 2018) (quoting *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Thus, its claim of privilege must fail.

Thus, this is really a dispute about the work-product doctrine.

### 3. Work-Product Doctrine

"The work-product doctrine is a qualified privilege and is 'distinct from and broader than the attorney-client privilege.'" *Chartraw v. City of Shawano*, No. 16-C-807, 2017 U.S. Dist. LEXIS 187590, at *10 (E.D. Wis. Nov. 14, 2017) (quoting *United States v. Nobles*, 422 U.S. 225, 238 n.11, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975)); *see also Hickman v. Taylor*, 329 U.S. 495 (1947); Fed. R. Civ. P. 26(b)(3). Although certain exceptions apply, generally under the doctrine "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). The doctrine serves two purposes: "(1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2009). "[T]he threshold determination in any case involving an assertion of the work product privilege … is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983).

But "litigation can be anticipated at the time almost any incident occurs …." *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992). Therefore, "a *substantial* and *significant* threat of litigation is required before a discovery opponent's

anticipation will be considered a reasonable and justifiable motivation for production of a document." *Id*. (emphasis added). The protection will apply only if the documents were "prepared … *because of* the prospect of litigation" or "'some articulable claim, *likely* to lead to litigation' had arisen." *Binks*, 709 F.2d at 1120 (emphasis in original) (quoting *Diversified Indus. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977); *Coastal States Gas Corp. v. Dep't of Energy*, 199 U.S. App. D.C. 272, 617 F.2d 854, 865 (1980)). "The fact that litigation actually ensues or that a party has retained an attorney, initiated investigations, or engaged in negotiations over a claim, is insufficient to dispositively establish anticipation of litigation." *Allendale*, 145 F.R.D. at 87 (citing *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 660 (S.D. Ind. 1991) (collecting cases); *see also Binks*, 709 F.2d at 1118 ("The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege; the privilege is not that broad.").

Businesses routinely investigate matters for their own purposes independent of the prospect of litigation. *See Binks*, 709 F.2d at 1119 (quoting *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982)). Thus, "[n]ot all documents generated from an internal investigation are protected by the work product doctrine 'simply because a company's internal investigation is coexistent with a present or anticipated lawsuit that is the same subject matter of the litigation.'" *Long v. Anderson Univ.*, 204 F.R.D. 129, 136 (S.D. Ind. 2001) (quoting *Caremark, Inc. v. Affiliated Comput.*

8

*Servs., Inc.*, 195 F.R.D. 610, 614-15 (N.D. Ill. 2000)). "[T]here is a 'causation' element insofar as production of the material must be caused by the anticipation of litigation." *Allendale*, 145 F.R.D. at 87. If the documents "would have been created irrespective of litigation [they] are not under the protection of the work product doctrine." *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, No. 1:14-cv-00006-RLM-SLC, 2017 U.S. Dist. LEXIS 57370, at *22 (N.D. Ind. Apr. 14, 2017) (quoting *Caremark*, 195 F.R.D. at 614).

The party seeking the protection of the work-product doctrine has the burden to show the doctrine applies. *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, No. 1:14-cv-00006-RLM-SLC, 2017 U.S. Dist. LEXIS 57370, at *22 (N.D. Ind. Apr. 14, 2017) (citing *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 523 (N.D. Ind. 2009)); *Caremark, Inc. v. Affiliated Comput. Servs., Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000) (citing *Logan v. Commercial Union Insurance Co.*, 96 F.3d 971, 976 (7th Cir. 1996)).

The court concludes that SoftwareONE has failed in its burden to show that the documents sought by Anderson were created in anticipation of litigation rather than for SoftwareONE's own business purposes. Although SoftwareONE could reasonably recognize based on some of the allegations in Anderson's October 1, 2015 email (ECF No. 25-1) that there was a possibility that she might sue it, Anderson's allegations were expansive, including many matters for which she could not personally seek legal redress but which any prudent business would investigate. For example, Anderson alleged:

> "SWO had an unwritten policy of hiring young candidates at the exclusion of older candidates without regard for their respective qualifications."
>
> "I have observed SWO push out or demote older employees (those 40 years of age and older) in favor of retaining or hiring younger employees in their stead."
>
> "I've also observed a number of instances in which female employees have been denied the same treatment and benefits as male employees." She pointed to two specific females whom she alleged did the same work as male counterparts but without the same title.

(ECF No. 25-1 at 1-2.)

The fact that SoftwareONE's in-house attorney initiated the investigation, coupled with the fact that SoftwareONE learned soon after the email complaint that Anderson had retained counsel, are insufficient without significantly more to sustain SoftwareONE's burden on this issue. Significantly, as Anderson points out, SoftwareONE does not support its motion with an affidavit or declaration from its in-house counsel, or anyone else for that matter, stating that QTI was hired in anticipation of litigation. Moreover, SoftwareONE has failed to support its claim of work-product with the sorts of relevant details the court would expect—such as the nature and scope of QTI's engagement; details as to the actual investigation; a detailed description of the documents that were allegedly created in anticipation of litigation; details as to SoftwareONE's policies and procedures for conducting internal investigations of complaints of discrimination, etc. Without the identification and discussion of specific

documents, the court is unable to analyze whether any particular document was created in anticipation of litigation.

Essentially all SoftwareONE has offered are the assertions of its current attorney contained in its brief, where she asserts, unsupported by any evidentiary support, that SoftwareONE retained QTI in anticipation of litigation. (*See, e.g.*, ECF No. 21 at 2 ("In anticipation of litigation, SWO's in-house counsel retained both outside counsel and an Human Resources Consulting firm, QTI."; "… SWO's counsel understood there to be a threat of and anticipated litigation since Plaintiff informed it and QTI that she had retained counsel …."; "The type of the documents now sought by Plaintiff's subpoena to QTI necessarily contain confidential information as per the agreement between SWO and QTI, as well as the impressions of legal counsel and SWO's communications with QTI that were prepared as a result of anticipated litigation.").) But that falls far short of showing the requisite causation between the prospect of litigation and the investigation. It is entirely foreseeable that, even if SoftwareONE were somehow assured that Anderson would not be pursuing litigation, it nonetheless would investigate her allegations. Therefore, the court will deny SoftwareONE's motion to quash the subpoena issued to QTI.

**IT IS THEREFORE ORDERED** that SoftwareONE's motion to quash the subpoena issued to QTI Humans Resources, Inc. (ECF No. 20) is **denied**. QTI shall fully comply with the subpoena no later than 14 days of the date of this order.

**IT IS FURTHER ORDERED** that SoftwareONE's motion to file its reply instanter (ECF No. 27) is **denied**.

Dated at Milwaukee, Wisconsin this 30th day of July, 2018.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge